IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG HEILMAN, | : | No.  4:07-cv-1308 |
| | : | |
| Plaintiff, | : | Judge John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| T.W. PONESSA AND | : | |
| ASSOCIATES, *et al.*, | : | |
| | : | |
| Defendants | : | |

## **MEMORANDUM**

January **30** , 2008

Plaintiff Craig Heilman filed the complaint in this § 1983 action on July 18, 2007, alleging violations of his Fourth, Eighth, and Fourteenth Amendment rights. (Doc. 1.)  Heilman filed an amended complaint on September 14, 2007.  (Doc. 16.) Currently pending before the Court are the motions to dismiss of Defendant Kim McDermott (Doc. 7)[1]; Defendants Rachel Rausher, Cindy Merryman, and Clinton County (Doc. 20); and Defendants T.W. Ponessa & Associates and Molly Simmons (Doc. 24).  For the reasons set forth below, all three of these motions will be granted.

---

[1] Although filed before Heilman's amended complaint, McDermott's motion to dismiss is deemed to be directed at the amended complaint.  *See* Order of September 18, 2007 (Doc. 19).

## I.     STANDARD OF REVIEW

All of the defendants have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).  A Rule 12(b)(6) motion should be granted "if it appears to a certainty that no relief could be granted under any set of facts which could be proved...[b]ut a court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse*, 132 F.3d at 906.

## II.    BACKGROUND

In this case, Plaintiff Craig Heilman claims that his constitutional rights were violated when his probation was revoked after he refused to admit guilt as part of a sexual offender treatment program that was a condition of his probation. Heilman also alleges he was denied medical care while incarcerated.  In accordance with the standard of review governing motions to dismiss pursuant to

2

Rule 12(b)(6), the following facts are derived from the complaint and are viewed in the light most favorable to the plaintiff.

In February 2002, Heilman was charged with sexually assaulting his fifteen-year-old daughter. (Compl. ¶ 20.)  On July 19, 2002, in the Clinton County Court of Common Pleas, Heilman pled nolo contendere to one count of incest, although still denying that he engaged in the alleged criminal activity.  (*Id.* at ¶ 21.)  On September 9 and October 7, 2002, the court continued sentencing to allow Heilman to reconsider his plea because of his continued adamant denials of guilt.  (*Id.* at ¶¶ 23, 24.)  On November 26, 2002, Heilman filed a petition to withdraw his nolo contendere plea, which was granted on November 27, 2007. (*Id.* at ¶¶ 25-26.)  On June 9, 2003, however, Heilman rescinded his withdrawal of the nolo contendere plea.  (*Id.* at ¶ 27.)

On August 4, 2003, the court sentenced Heilman to 36 months of probation, the first 180 days of which were to be served on electronic monitoring.  (*Id.* at ¶ 28.)  A special condition of Heilman's probation was that he participate in a sexual offenders' treatment program.  (*Id.* at ¶ 29.)  Heilman was assigned to Probation Officer Rachel Rausher of the Clinton County Probation Office.  (*Id.* at ¶ 30.) Also on August 4, 2003, at Heilman's request, Rausher transferred supervision of his probation to the York County Probation Office, because Heilman was a

resident of York County. (*Id.* at ¶ 31.) Supervision of Heilman's probation was assigned to York County Probation Officer Kim McDermott. (*Id.* at ¶ 32.)

During the summer of 2003, Heilman underwent spinal fusion surgery, after which his doctor recommended that Heilman not travel and that he attend physical therapy three day a week. (*Id.* at ¶ 33.)

On September 24, 2003, to comply with the special condition of his probation, Heilman attempted to enroll in a sexual offender treatment course offered by T.W. Ponessa and Associates, a private counseling business in York, Pennsylvania. (*Id.* at ¶ 34.) Heilman, however, refused to sign enrollment paperwork in which he was required to admit guilt to the crime of incest. (*Id.* at ¶ 35.) A week later, T.W. Ponessa employee Molly Simmons advised him that refusal to sign the paperwork was a violation of his probation. (*Id.* at ¶ 36.) McDermott also advised Heilman that he would be in violation of his probation if he did not sign the paperwork. (*Id.* at ¶ 37.) Heilman signed the paperwork, although he still believed he was not guilty of any crime. (*Id.* at ¶ 38.)

Heilman attended two or three meetings at T.W. Ponessa, but was ordered by Simmons to leave his last meeting because he would not admit his guilt. (*Id.* at ¶ 39.) On the advice of Simmons, Heilman was terminated from the sexual offenders' treatment program for his refusal to admit his guilt. (*Id.* at ¶ 40.)

As a result of his termination from the sexual offenders' treatment program, McDermott ordered revocation of Heilman's electronic monitoring and the return of his probation to Clinton County. (*Id.* at ¶ 41.)  Upon receiving this information from McDermott, Rausher issued a violation of probation. (*Id.* at ¶ 43.)  As a result of the probation violation issued by Rausher, a detainer was issued for Heilman on October 20, 2003. (*Id.* at ¶ 44.)  On October 21, 2003, Heilman was incarcerated in York County Prison. (*Id.* at ¶ 46.)  On October 22, 2003, Heilman was transferred to the Clinton County Prison. (*Id.* at ¶ 47.)

A revocation hearing was held on November 17, 2003. (*Id.* at ¶ 49.)  The court informed Heilman of his entitlement to a *Gagnon I* and *Gagnon II* hearing, but no further hearing was scheduled.[2]  (*Id.* at ¶ 48(2).)[3]  The court ordered Heilman to undergo a sixty-day psychological evaluation, and Heilman was transferred to the State Correctional Institute - Camp Hill for this purpose. (*Id.* at ¶ ¶¶ 49(2), 50(2).)  The Sexual Offenders' Assessment Board determined that Heilman did not meet the criteria for a sexually violent predator. (*Id.* at  ¶ 51(2).)  After his sixty-day evaluation, Heilman was returned to Clinton County Prison. (*Id.* at ¶ 52.)

---

[2] *See Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

[3] The Amended Complaint contains two paragraphs numbered 48-51.  The "(2)" in this citation and hereinafter denotes reference to the second such numbered paragraph.

During his incarceration at the Clinton County Prison, arrangements were made for Heilman to attend weekly ninety minute sexual offender treatment sessions. (*Id.* at ¶¶ 53, 55.) On February 19, 2004, Clinton County Probation Officer Cindy Merryman, sent a letter to Heilman indicating that his level of denial was so deep-rooted that the ninety minute sessions were insufficient for his treatment and that his attendance was detrimental to other members of the treatment group, and as a result, he would no longer be allowed to attend the counseling program. (*Id.* at ¶ 55.)

Also during his incarceration at the Clinton County Prison, Heilman was denied the physical therapy and treatment recommended by his doctor following his spinal surgery in the summer of 2003, despite his requests. (*Id.* at ¶¶ 68-69.) Heilman's family doctor faxed Clinton County a list of Heilman's medications, but Heilman was not provided these medications. (*Id.* at ¶ 70.) Heilman's surgeon informed Clinton County of Heilman's need for physical therapy and recommended exercises Heilman could do, but Heilman was not granted the opportunity to engage in these exercises. (*Id.* at ¶ 71.) During his incarceration Heilman experienced three ruptures for which he never received treatment. (*Id.* at ¶ 72.) He was also denied his reading glasses and an appliance for his treatment of TMJ. (*Id.* at ¶ 73.) As a result of these denials, Heilman claims he did not heal

properly after his surgery, and his health has since deteriorated. (*Id.* at ¶ 75.)

On June 14, 2004, a re-sentencing hearing was held before the Clinton County Court of Common Pleas, at which Heilman presented the evaluation of the Assessment Board and a letter from a therapist willing to accept him for counseling. (*Id.* at ¶ 56.) The court re-sentenced Heilman to 20-120 months imprisonment. (*Id.* at ¶ 58.) Heilman appealed the sentence. (*Id.* at ¶ 61.) On June 1, 2005, the Pennsylvania Superior Court reversed and remanded. (*Id.* at ¶ 62; *Commonwealth v. Heilman*, 876 A.2d 1021 (Pa. Super. Ct. 2005).) The Court found that Heilman had been granted an appropriate *Gagnon I* hearing, which satisfied the requirement that the Commonwealth prove probable cause of a probation violation. (*Heilman*, 876 A.2d at 1027; *see* Compl. ¶¶ 61-62.) The Court also found, however, that Heilman had not waived his right to a *Gagnon II* hearing and that the June 14, 2004 re-sentencing hearing was not sufficient to determine whether Heilman willfully violated his probation. (Compl. ¶¶ 61-62; *Heilman*, 876 A.2d at 1027-28.)

On July 18, 2005, on remand, the Clinton County Court of Common Pleas issued an order directing Heilman to pay fines and costs, engage in 500 hours of community service, pay the costs of the mental health needs of his victim, and sentencing Heilman to 36 months probation, effective August 4, 2003. (Compl. ¶¶

66-67; July 18, 2005 Order at Defs.' Reply Br., App. A.)[4] Heilman was released from incarceration on July 18, 2005. (Compl. ¶ 66.)

Heilman filed the complaint in this action on July 18, 2007. (Doc. 1.) An amended complaint was filed on September 14, 2007. (Doc. 14.) The amended complaint does not set forth individual counts against specific defendants. Heilman alleges generally that T.W. Ponessa and Simmons violated his constitutional rights (Compl. ¶ 80); that probation officers McDermott, Rausher, and Merryman violated his Fourth and Fourteenth Amendment rights (*id.* at 81); and that Clinton County violated his Eighth Amendment rights (*id.* at 83).

## III.   DISCUSSION

### A.   Defendants McDermott, Rausher, and Merryman

Heilman alleges the individual probation officers violated his Fourth and Fourteenth Amendment rights by advising that he violated his probation, leading to his arrest and incarceration. Each of the probation officer defendants seeks

---

[4] Although the July 18, 2005 Order is not attached to the Amended Complaint, it is explicitly referenced therein and underlies Heilman's claims. The Court may therefore consider it without converting the present motions to dismiss to motions for summary judgment. *Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003) ("Under Federal Rule of Civil Procedure 12(b)(6), ... a defendant may supplement the complaint by adding exhibits such as public records and other indisputably authentic documents underlying the plaintiff's claims."); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint.").

dismissal of Heilman's claims on three grounds: (1) that the claims are barred by the statute of limitations, (2) that Heilman has failed to state a claim, and (3) that they are protected by immunity. For the reasons that follow, all three of these grounds merit dismissal of Heilman's claims.

### 1.    Statute of Limitations

"Actions brought under 42 U.S.C. § 1983 are governed by the personal injury statute of limitations of the state in which the cause of action accrued." *O'Connor v. City of Newark*, 440 F.3d 125, 126 (3d Cir. 2006). The applicable Pennsylvania statute of limitations for personal injury actions is two years. 42 Pa. Cons. Stat. Ann. § 5524; *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003). Although the applicable statute of limitations is borrowed from state law, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, --- U.S. ---, 127 S. Ct. 1091, 1095 (2007). Rather, accrual of a § 1983 cause of action is "governed by federal rules conforming in general to common-law tort principles. Under those principles, it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace*, 127 S. Ct. at 1095 (citations omitted). Generally, therefore, "[a] section 1983 cause of action accrues when the plaintiff knew or

should have known of the injury upon which its action is based." *Sameric Corp.*

*of Del. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

Heilman's complaint does not explicitly state a theory of his Fourth and

Fourteenth Amendment claims against the probation officers. Heilman alleges

that the actions of the probation officers resulted in "the loss of [his] liberty rights

without probable cause and that the officers violated his constitutional rights by

"advising that [he] violated his probation." In his briefs in opposition to the

current motions, Heilman attempts to cast these allegations as giving rise to

procedural and substantive due process causes of action, arguing that "he was

deprived of his liberty during the period of time that he was wrongfully

incarcerated, which was a direct result of the actions of the defendant [probation

officers]." Heilman's claims, however, are most analogous to the torts of false

arrest and false imprisonment.[5] *See Wallace*, 127 S. Ct. at 1096 (stating "false

_____

[5] Although Heilamn calls them due process claims in his briefs, the complaint states that his causes of action are based on the probation officers' violation of his Fourth and Fourteenth Amendment rights. "A false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law. On the other hand, where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest. A false imprisonment claim under § 1983 which is based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures." *Groman v. City of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). Further, the Supreme Court has suggested that a § 1983 claim based on a theory of malicious prosecution implicates the Fourth Amendment. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 602 (3d Cir.2005) (citing *Albright v. Oliver*, 510 U.S. 266, 275 1994); *see also Wallace*, 127 S. Ct. at 1096 & n.2.

imprisonment consists of detention without legal process"); *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988) (to state a claim for false arrest, a plaintiff must demonstrate that there was an arrest and that it was made without probable cause); *Groman v. City of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (stating "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest."). Heilman alleges that the probation officers' revocation of his probation led to his arrest without probable cause and his detention without proper legal process. The tort that provides the proper analogy to Heilman's asserted cause of action is false imprisonment.[6] *See Wallace*, 127 S. Ct. at 1095.

The Supreme Court explained in *Wallace* that "[l]imitations begin to run against an action for false imprisonment when the alleged false imprisonment ends" and that "[r]eflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process* – when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* at 1095-96. In this case, in October 2003, as a result of his termination from the T.W. Ponessa treatment program,

---

[6] "False arrest and false imprisonment overlap; the former is a species of the latter", and therefore, we refer to the two torts together as false imprisonment. *Wallace*, 127 S. Ct. at 1095.

McDermott ordered the return of Heilman's probation to Clinton County, and
Rausher issued a violation of parole, which resulted in a detainer being issued for
Heilman on October 20, 2003 and his incarceration on October 21, 2003.
Heilman's probation revocation hearing was held on November 17, 2003.  His
false imprisonment thus ended on November 17, 2003.  It is immaterial that
Heilman's revocation hearing was later found to meet *Gagnon I* but not *Gagnon II*
requirements.  A claim for false arrest or imprisonment accrues when the victim is
held pursuant to legal process, even though the process may be flawed.[7]  *Id.* at
1095-96 (holding that false arrest claim accrued when plaintiff appeared before
magistrate and was bound over for trial, even though plaintiff's conviction was
later overturned because he was arrested without probable cause).  Because
Heilman's July 18, 2007 complaint was filed more than two years after the
November 17, 2003 date his claims accrued, his § 1983 claims based on a theory
of false arrest or false imprisonment are time-barred.

Heilman argues that the discovery rule tolls the running of the statute of
limitations for his claims until his release from incarceration on July 18, 2005.

---

[7] Heilman's claim that his initial process was flawed may form the basis for a malicious
prosecution cause of action, but this theory has already been addressed and rejected by the
Pennsylvania Superior Court, *see Heilman*, 876 A.2d at 1027, and therefore, as discussed below,
is barred by the *Heck* doctrine and collateral estoppel.

Although the accrual date of a § 1983 cause of action is a question of federal law, federal courts "have generally referred to state law for tolling rules." *Id.* at 1098; *see also Lake v. Arnold*, 232 F.3d 360, 368 (3d Cir. 2000) (stating that in borrowing state statute of limitations for § 1983 action, courts "must also incorporate any relevant state tolling rules"). Pennsylvania's "discovery rule is designed to ameliorate the sometimes-harsh effects of the statute of limitations, and it is often applied in medical malpractice and latent disease cases in which the plaintiff is unable to discover his or her injury until several years after the tort occurred." *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006) (quoting *Cathcart v. Keene Indus. Insulation*, 471 A.2d 493, 500 (Pa. Super. Ct. 1984)). "The discovery rule tolls the accrual of the statute of limitations when a plaintiff is unable, despite the exercise of due diligence, to know of the injury or its cause." *Id.* (quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce*, Inc., 468 A.2d 468, 471 (Pa.1983)). "Under the rule, even if a plaintiff suffers an injury, the statute of limitations does not begin to run until the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Id.* (quoting *Debiec v. Cabot Corp.*, 352 F.3d 117, 129 (3d Cir.2003)).

13

The discovery rule simply has no application in this case. Heilman surely knew or, in the exercise of reasonable diligence, should have known of his alleged injury as of the date of his arrest, and certainly, no later than the date of his revocation hearing. Heilman argues that, "[a]lthough he felt very strongly that he was being improperly treated, it was not until his release on July 18, 2005 that he fully became aware" of the alleged constitutional violations. Heilman's "strong feelings" of injury, however, were enough to trigger the running of the statute of limitations. A plaintiff need not know the full extent or nature of his injuries before the statute begins to run. *Wallace*, 127 S. Ct. at 1097 ("The cause of action accrues even though the full extent of the injury is not then known or predictable."); *Mest*, 449 F.3d at 510-11 ("For the statute of limitations to run, a plaintiff need not know the exact nature of his injury, as long as it objectively appears that the plaintiff is reasonably charged with the knowledge that he has an injury caused by another.").

The Supreme Court in *Wallace* rejected an argument made by the plaintiff in that case which is nearly identical to Heilman's. There, the plaintiff argued that because the initial unconstitutional false arrest and imprisonment "set the wheels in motion for his subsequent conviction and detention," his false imprisonment did not end, and therefore his cause of action did not accrue, until his release from

14

custody. *Wallace*, 127 S. Ct. at 1096-97. The Court rejected this argument,

holding that, even assuming damages for his detention after arraignment could be

regarded as consequential damages from the unlawful arrest, the plaintiff's cause

of action accrues, and the statute of limitations commences, "when the wrongful

act or omission results in damages" even if the full extent of which is not then

known. *Id.* at 1097. Similarly, in this case, Heilman argues that the actions of the

probation officers set in motion the chain of events leading to his arrest and

incarceration, and that this incarceration did not end until July 18, 2005, at which

time his claim accrued. Like the *Wallace* court, the Court here must reject this

argument. Even assuming Heilman's parole revocation and arrest were without

probable cause, Heilman was granted a revocation hearing – legal process – on

November 17, 2003. His Fourth or Fourteenth Amendment cause of action for

false imprisonment accrued, and the statute of limitations commenced, on that

date. Heilman's 2007 complaint in this action is thus well beyond the two-year

statute of limitations, and his § 1983 claims against the probation officers must be

dismissed.

### 2.    The *Heck* Doctrine

To the extent that Heilman's Fourth and Fourteenth Amendment claims

against the probation officers are based, not on a theory of false imprisonment, but

malicious prosecution, they must also be dismissed, though for a different reason: they are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny.

The Supreme Court has distinguished between a § 1983 claim based on a theory of false imprisonment, which remedies detention without legal process, and a claim based on "the entirely distinct tort or malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process." *Wallace*, 127 S. Ct. at 1096. A malicious prosecution claim beings where a false imprisonment claim ends: with the institution of legal process. *Id.* In this case, Heilman's claims could be construed as seeking damages from the probation officers for his incarceration following his revocation hearing, thereby asserting a malicious prosecution claim. Such a claim, however, is barred by *Heck v. Humphrey*.

Under *Heck*, a plaintiff may not bring a § 1983 claim for alleged unconstitutional confinement "if success in that action would necessarily demonstrate the invalidity of the confinement," *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), unless the plaintiff proves the sentence of confinement "has been reversed on direct order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," *Heck*, 512 U.S. at 486-87. Heilman's claim that revocation of

his probation was unconstitutional falls within the *Heck* category of cases. *See Hunterson v. Disbato*, 244 Fed. Appx. 455, 458 (3d Cir. 2007) ("An action alleging that a parole revocation was constitutionally infirm falls into th[e *Heck*] category of cases."); *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (applying *Heck* to bar § 1983 claim based on revocation of parole); *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996) (holding *Heck* "applies to proceedings that call into question the fact or duration of parole or probation"); *Hawn v. Pavlick*, C.A. No. 07-110, 2007 WL 1063848, at *3 (W.D. Pa. Apr. 5, 2007) (collecting cases extending *Heck* to plaintiffs attacking parole and probation decisions).

For Heilman to succeed in a § 1983 claim based on a theory of malicious prosecution, he would have to show that his probation revocation was initiated without probable cause. *See Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir.2003) ("To prevail on a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."). Such a showing would necessarily demonstrate the invalidity

of his probation revocation and his subsequent re-sentencing, and therefore,

Heilman must demonstrate that his parole revocation and sentence have been

invalidated.  Heilman cannot make this showing.  Heilman appealed his parole

revocation and June 14, 2004 sentence, and although the Superior Court reversed

and remanded, the Court of Common Plea's July 18, 2005 sentence on remand has

never been invalidated.  Heilman's claims are therefore barred by the *Heck*

doctrine.[8]  *See Hunterson*, 244 Fed. Appx. at 458 (§ 1983 action for alleged

unconstitutional parole revocation barred by *Heck* where habeas petition denied);

*Drayer v. Delaware*, 173 Fed. Appx. 997, 999 (3d Cir. 2006) (former state inmate

could not maintain § 1983 action alleging that his probation revocation violated

his constitutional rights where conviction and sentence had not been declared

invalid); *Mair v. Mullen*, C.A. No. 05-1892, 2005 WL 2000200, at *3 (D.N.J.

Aug. 15, 2005) ("Plaintiff's claim respecting his wrongful incarceration for

violation of probation is not cognizable under *Bivens* because the finding of his

probation violation has been neither reversed, expunged, declared invalid, or

called into question through a writ of habeas corpus.").

---

[8] In that a § 1983 premised on a false arrest or false imprisonment theory similarly would invalidate Heilman's probation revocation and final sentence, such claims are also barred by the *Heck* doctrine in addition to the statute of limitations.

18

### 3. Failure to State a Claim

The probation officers also correctly argue that Heilman has failed to state a claim against them upon which relief can be granted. As noted above, to state a Fourth or Fourteenth Amendment claim based on a theory of either false imprisonment or malicious prosecution, Heilman must demonstrate that his arrest and probation revocation were initiated without probable cause. *Dowling*, 855 F.2d at 141; *Estate of Smith*, 318 F.3d at 521. Heilman cannot make this showing.

First, the Pennsylvania Superior Court has already determined that probable cause existed for revocation of Heilman's probation. In its June 1, 2005 order, the Superior Court held that Heilman's revocation hearing "satisfied the *Gagnon I* requirement that the Commonwealth prove probable cause of a violation since [Heilman] admitted during the hearing that he had been discharged from court-ordered therapy." *Heilman*, 876 A.2d at 1027.

The doctrine of collateral estoppel is applicable to § 1983 suits. *See Allen v. McCurrey*, 449 U.S. 90, 104 (1980). "When a prior case has been adjudicated in a state court, federal courts are required by 28 U.S.C. § 1738 to give full faith and credit to the state judgment and, in section 1983 cases, apply the same preclusion rules as would the courts of that state." *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993). Under Pennsylvania law, "[t]he doctrine of

19

collateral estoppel precludes relitigation of an issue determined in a previous action if: (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. *Office of Disciplinary Counsel v. Duffield*, 644 A.2d 1186, 1189 (Pa. 1994).

In this case, the Pennsylvania courts decided that probable cause existed for Heilman's probation revocation, the identical issue that Heilman would have to demonstrate to state a § 1983 claim against the probation officers. This issue was finally adjudicated on the merits by the Pennsylvania Superior Court. *Heilman*, 876 A.2d at 1027. Heilman was, of course, a party to his appeal of the probation revocation and had a full and fair opportunity to argue the issue. Finally, the determination of the probable cause issue was essential to the Superior Court's decision that Heilman's revocation hearing met the requirements of a *Gagnon I* hearing. *Id.* Collateral estoppel precludes Heilman from relitigating the probable cause issue, and therefore, he cannot state a Fourth or Fourteenth Amendment claim against the probation officer defendants.

## 4.    Immunity

Finally, the probation officers are also entitled to dismissal of Heilman's claims because they are protected by qualified immunity. "[P]robation and parole officers are entitled to absolute immunity when they are engaged in adjudicatory duties. In their executive or administrative capacity, probation and parole officers are entitled only to a qualified, good faith immunity." *Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir. 1989) (citing *Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir. 1986)). Whether the probation officer defendants were acting in a judicial or executive capacity is determined by examination of the allegations of the complaint. *Id.* at 775-76. The allegations against the probation officers in this case – that they supervised Heilman's probation, investigated his compliance with probation conditions, and issued the probation violation that led to his arrest – are executive or administrative acts. *See Breslin v. Brainard*, C.A. No. 01-7269, 2002 WL 31513425, at *7 n.10 (E.D. Pa. Nov. 1, 2002) (collecting Third Circuit precedent regarding distinction between adjudicatory and executive acts of probation and parole officers). The probation officer defendants are therefore entitled to qualified immunity from suit.

"Qualified immunity shields state officials from suit when their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Burella v. City of Philadelphia*, 501 F.3d 134, 139 (3d Cir. 2007) (quoting *Yarris v. County of Delaware*, 465 F.3d 129, 140 (3d Cir. 2006)).  Qualified immunity is immunity from suit rather than a mere defense to liability, which is effectively lost if a case is erroneously permitted to go to trial, and therefore questions of immunity should be resolved at the earliest possible stage in litigation. *Scott v. Harris*, --- U.S. ---, 127 S. Ct. 1769, 1773 n.2 (2007) (citations omitted).

"In resolving questions of qualified immunity, courts are required to resolve a threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry.  If, and only if, the court finds a violation of a constitutional right, the next, sequential step is to ask whether the right was clearly established in light of the specific context of the case." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201. To be clearly established, "[t]he contours of the right must be sufficiently clear

22

that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

In this case, the question of the probation officer's qualified immunity is resolved at step one of the inquiry: there is no constitutional violation. To make out a Fourth or Fourteenth Amendment claim, whether based on a theory of false arrest, false imprisonment, or malicious prosecution, Heilman must demonstrate that revocation of his parole and his subsequent arrest were accomplished without probable cause. *See Dowling*, 855 F.2d at 141; *Groman*, 47 F.3d at 636; *Estate of Smith*, 318 F.3d at 521. As discussed above, the Pennsylvania Superior Court has already determined that probable cause existed for Heilman's arrest for probation violation and revocation of his probation. *Heilman*, 876 A.2d at 1027.

Further, the facts alleged by Heilman in this action make clear that such probable cause existed. The Supreme Court has described probable cause as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "Probable cause does

23

not require the same type of specific evidence of each element of the offense as would be needed to support a conviction.  Therefore, the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction."  *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (citations omitted).  Here, Heilman admits that he was terminated from his sexual offender treatment programs because he refused to admit to sexual abuse of his daughter and disrupted the treatment of others.  This fact alone is sufficient to support the probation officers' belief that Heilman had violated the condition of his probation requiring him to participate in the sexual offender treatment program.  *See Donaldson v. Mugavero*, 126 Fed. Appx. 63, 65-66 (3d Cir. 2005) (holding parole officer was entitled to qualified immunity where he issued warrant and arrested parolee for technical parole violations before officer was informed that parolee's sentence had been vacated).

Heilman argues that it was "irrational" for the probation officers "to make a requirement of [his] probation that he admit guilt to a crime for which he never either pled guilty or was convicted by a jury."  But the probation officers did not make admission of guilt a requirement of his probation.  The sentencing court did, in part, by requiring Heilman to attend sexual offender treatment, and Heilman did by choosing a treatment program that he knew from the start required him to admit

24

his guilt.  In performing their executive and administrative functions, the probation officers carried out, in good faith, the conditions of the sentence handed down by the court, and these officers had more than probable cause to believe that Heilman had violated these conditions.  The probation officers therefore committed no constitutional violation and are protected by qualified immunity. The claims against the probation officer defendants will be dismissed.

### B.     Defendants T.W. Ponessa and Simmons

T.W. Ponessa and its employee Simmons seek dismissal of Heilman's claims on the grounds that:  (1) that the claims are barred by the statute of limitations and (2) that they are not state actors subject to § 1983 liability.  For the reasons that follow, both of these grounds merit dismissal of Heilman's claims.

### 1.     Statute of Limitations

Heilman does not assert a specific theory of T.W. Ponessa's and Simmons' liability, but alleges only that they "violated [his] rights by forcing him to admit guilt to a crime of which he never pled guilty or was convicted." (Compl. ¶ 80.) In opposition to these defendants' motion, however, Heilman argues that T.W. Ponessa and Simmons conspired with the probation officers to violate his Fourth and Fourteenth Amendment rights by providing the impetus for his probation revocation and arrest.  Heilman's § 1983 claims against T.W. Ponessa and

25

Simmons are therefore subject to the same statute of limitations as his claims against the probation officers.  Like the latter claims, Heilman's claims against T.W. Ponessa and Simmons are also time-barred.

### 2.   State Actors

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).  Thus "the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).  The question of "fair attribution" is determined by a two-part test.  "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible....  Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Id.*  To be considered "acting under color of state law," a § 1983 defendant must have exercised power

26

"possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49. "[T]he essence of section 1983's color of law requirement is that the alleged offender, in committing the act complained of, abused a power or position granted by the state." *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 24 (3d Cir. 1997).

T.W. Ponessa is a private business and Simmons is a private individual employed there. (Compl. ¶¶ 7-8.)[9] The complaint alleges that Heilman chose to attend counseling at T.W. Ponessa to comply with his probation conditions, that he was informed by Simmons that an admission of guilt was a prerequisite to the program, and that, upon Simmons' advice, Heilman was terminated from the treatment program after he recanted his admission of guilt. None of these allegations demonstrate that T.W. Ponessa or Simmons was clothed with state authority or abused power granted by the state. Courts have rejected claims that defendants were state actors in similar circumstances. *See Robert S. v. Stetson School, Inc.*, 256 F.3d 159, 164-69 (3d Cir. 2001) (holding that private school specializing in education of juvenile sex offenders was not a state actor despite receiving government funding and that students could not leave without

---

[9] T.W. Ponessa and Simmons submitted an unsworn affidavit of Catherine DeGuire, CEO of T.W. Ponessa, in support of their motion. However, this affidavit is not properly before the Court on the present motions to dismiss and has not been considered.

permission); *Layser v. Morrison*, 935 F. Supp. 562, 566 (E.D. Pa. 1995) (holding private psychologist not a state actor because plaintiff contacted psychologist on his own initiative). Heilman chose to receive counseling at T.W. Ponessa. The fact that he did so because some form of counseling was a requirement of a state court sentence does not make T.W. Ponessa or its employees state actors.

Heilman argues that T.W. Ponessa and Simmons may be considered state actors because they "conspired" with the probation officers to violate his constitutional rights in that, by terminating him from the treatment program, "Simmon[s] got the ball rolling that resulted in numerous constitutional violations." Heilman confuses but-for cause and conspiracy. "Although not an agent of the state, a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts under color of state law for purposes of § 1983." *Abbott v. Latshaw*, 164 F.3d 141, 147-48 (3d Cir. 1998). "Significant concerted action, however, must exist between state actors and a private individual in order to merit such a characterization." *Jackman v. McMillan*, 232 Fed. Appx. 137, 139 n.6 (3d Cir. 2007). Heilman does not assert any understanding or agreement – the *sine qua non* of a conspiracy, *Panatoytides v. Rabenold*, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999) – between T.W. Ponessa or Simmons and the probation officers. In fact, Heilman's complaint does not even

28

contain a conclusory allegation of a conspiracy. The mere fact that T.W. Ponessa terminated Heilman from its counseling program and, as an eventual result, Heilman's probation was revoked, does not indicate a conspiracy. Heilman has not alleged any basis upon which it could be found that T.W. Ponessa and Simmons acted under color of state law, and therefore, his § 1983 claims against these defendants will be dismissed.[10]

### C.    Defendant Clinton County

Heilman asserts an Eighth Amendment claim against Clinton County for lack of medical care while incarcerated at Clinton County Prison. Clinton County argues that Heilman's claim is barred by the statute of limitations and that he has failed to state a claim for municipal liability under § 1983. Both of these arguments warrant dismissal of Heilman's claim against Clinton County.

### 1.    Statute of Limitations

Clinton County first argues that Heilman's Eighth Amendment claim is barred by the two-year statute of limitations applicable to § 1983 claims. Heilman was incarcerated in Clinton County Prison on October 22, 2003. Sometime after

---

[10] Even if Heilman could sufficiently allege a conspiracy between T.W. Ponessa and Simmons and the probation officers, his claims would still be subject to dismissal because, as discussed above, the probation officers did not violate his Fourth or Fourteenth Amendment rights. Thus, even if T.W. Ponessa and Simmons and the probation officers acted jointly, their concerted actions did not violate Heilman's constitutional rights.

his November 17, 2003 revocation hearing, Heilman was transferred to SCI-Camp

Hill for a 60-day psychological evaluation.  Heilman was eventually returned to

Clinton County Prison and released on July 18, 2005.[11]  Heilman filed the

complaint in this action on July 18, 2007.

"A section 1983 cause of action accrues when the plaintiff knew or should

have known of the injury upon which its action is based." *Sameric Corp. of Del.*,

142 F.3d at 599.  Therefore, Heilman's Eighth Amendment claim accrued, and the

statue of limitations began to run, when he first knew, or should have know, of a

denial of medical treatment.  *See* Gordon v. Pugh, 235 Fed. Appx. 51, 53 (3d Cir.

2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993); *Bennett v. Div. of*

*Immigration Health Serv.*, C.A. No. 04-4251, 2006 WL 845864, at *4 (E.D. Pa.

Mar. 28, 2006).  Heilman does not allege when he was denied medical care, but

only that during his incarceration at Clinton County Prison his requests for

physical therapy, medications, reading glasses, and his TMJ appliance were

denied.  Clearly, however, Heilman's requests must have been denied sometime

after his incarceration on October 22, 2003 and before his release on July 18,

---

[11] In its brief in support of its motion, Clinton County states that Heilman was transferred from Clinton County Prison to SCI-Camp Hill on June 24, 2004 and was not returned to Clinton County Prison until July 13, 2005, just five days prior to his release.  This fact is not contained in the amended complaint, however, and Clinton County has submitted no public record or indisputably authentic document containing this information of which the Court may take judicial notice.  Therefore, on this motion to dismiss, the Court cannot consider this fact.

2005. Heilman's complaint, filed two years after his release, is therefore barred by the statute of limitations.

Heilman claims that the statute of limitations was tolled because the denial of medical care during his incarceration was a "constant pattern of conduct" that continued until his release. Under the continuing violations doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)). "To establish that a claim falls within the continuing violations theory, the plaintiff must do two things. First, he must demonstrate that at least one act occurred within the filing period: The crucial question is whether any present violation exists. Next, the plaintiff must establish that the [alleged wrong] is more than the occurrence of isolated or sporadic acts." *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755 (3d Cir. 1995). In examining this second step, "courts should consider at least three factors: (1) subject matter – whether the violations constitute the same type ..., tending to connect them in a continuing violation; (2) frequency – whether the acts are recurring or more in the

31

nature of isolated incidents; and (3) degree of permanence – whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights .... The consideration of degree of  permanence is the most important of the factors." *Cowell*, 263 F.3d at 292 (citing *West*, 45 F.3d at 755 n.9). The burden is on the plaintiff to demonstrate that the continuing violations doctrine applies. *Id.*

In this case, Heilman has not met step one of his burden.  He has not alleged any act that occurred during the limitations period, and it is extremely unlikely that can do so.  Heilman's complaint was filed on July 18, 2007, and Heilman was released from Clinton County Prison on July 18, 2005.  Thus, only if Heilman can demonstrate that a denial of adequate medical care occurred on the day he was released would the continuing violations doctrine apply.  Even if Heilman had made such a showing, he has not established that Clinton County's alleged wrongs were more than isolated or sporadic acts.  Heilman's claims may generally be grouped together under the Eighth Amendment, but each allegation concerns a discrete request for a different treatment, prescription, or device that was denied. The fact that Heilman spent at least two months at a facility other than Clinton County Prison greatly disrupts the "continuing" nature of the alleged violations. Most importantly, Heilman should have known at an early point in his

incarceration that once his requests for treatment were denied, prison officials were unlikely to simply change their minds and provide him with whatever medical care he requested. The denial of his requests for treatment, which necessarily occurred prior to his release, put Heilman on notice of his duty to assert his right to adequate medical treatment while incarcerated. The continuing violations doctrine does not save his claims from the statute of limitations.

### 2.    Municipal Liability Under Section 1983

Heilman's Eighth Amendment claim against Clinton County must also be dismissed because he has failed to state a § 1983 claim against the municipality. Under the Supreme Court's holding in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), municipalities and local government entities cannot be held liable under § 1983 on a theory of respondeat superior. *See Natale v. Camden County Corr. Facility*, 318 F.3d 575583-84 (3d Cir. 2003). Rather, a § 1983 plaintiff must show that there was a relevant municipal policy or custom, and that the policy or custom caused the alleged constitutional violation. *Id.* "A policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict, [and a] custom is an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." *Id.* at 584

33

(citations, internal punctuation omitted). "Under *Monell,* unconstitutional actions borne of municipal policies or customs cannot be attributed to a municipality as an abstract entity. Rather, a plaintiff can establish liability based on a municipal policy or custom only if the plaintiff has both connected the policy to a constitutional injury and adduced evidence of scienter on the part of a municipal actor with final policymaking authority in the areas in question." *Berthesi v. Pa. Bd. of Probation,* 246 F. Supp. 2d 434, 439 (E.D. Pa. 2003) (citing *Simmons v. City of Philadelphia,* 947 F.2d 1042, 1061-62 (3d Cir. 1991)).

Heilman's amended complaint does no more than regurgitate the standard for municipal liability under § 1983, stating that "Clinton County engaged in a policy, custom and practice of denying proper medical care which led to the Plaintiff failing to receive proper medical care." (Compl. ¶ 84.) This bare conclusory allegation does not meet the pleading standards of Rule 8 or survive a motion to dismiss under Rule 12(b)(6). *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Heilman has alleged no facts to support the existence of a policy or

34

custom that resulted in his alleged denial of medical care, nor has he identified either a municipal agent with the authority to create such a policy or evidence that such an agent knew of the policy's unconstitutional consequences.  For this reason, Heilman's complaint against Clinton County must be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the motions to dismiss filed by the defendants in this action will be granted.  Because Heilman's claims are barred by the statute of limitations, as well as the *Heck* doctrine, qualified immunity, and *Monell*, amendment of his claims would be futile, and therefore, dismissal of his complaint is with prejudice.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997) ("[A] court should deny leave to amend if the moving party is guilty of undue delay, bad faith, dilatory motive, prejudice, or his or her amended claims are futile.").  An appropriate order shall enter.